UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNITED STATES OF AMERICA,                    :

              -against-                    :         17 Cr. 227 (VEC)

SALVADOR DIAZ,                    :

              Defendant.                    :

-------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF SALVADOR DIAZ'S <u>MOTION TO DISMISS THE INDICTMENT</u>

David E. Patton
Federal Defenders of New York, Inc.
Attorney for Defendant
  Salvador Diaz
52 Duane Street, 10th Floor
New York, New York 10007
Tel.: (212) 417-8700

Meghan J. Gilligan
Annalisa Miron
*Of Counsel*

TO:   Joon H. Kim
      United States Attorney
      Southern District of New York
      One St. Andrew's Plaza
      New York, New York 10007

          Attn.:  Jessica Greenwood
          Assistant United States Attorney
          Southern District of New York

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ........................................................................................................ ii

**PRELIMINARY STATEMENT** .............................................................................................. 1

**ARGUMENT** .................................................................................................................................. 5

**I.  42 U.S.C. § 16911(5)(A)(iv) violates Art. I, § 1 of the Constitution and the non-delegation doctrine** ....................................................................................... 5

    A.  Section 16911(5)(A)(iv) impermissibly delegates "legislative power" to the Secretary to prescribe the "sex offense" element of a SORNA failure to register offense, 18 U.S.C. § 2250 ................................................................................. 6

    B.  Neither § 16911(5)(A)(iv) nor any other SORNA provision articulate an "intelligible principle" to guide the Secretary in exercising the delegated authority to define "sex offense" ........................................................................ 9

**II.  The Secretary of Defense promulgated Enclosure 27 in violation of the Administrative Procedure  Act, 5 U.S.C. § 553** ............................................... 19

    A.  Applicable Law ................................................................................................... 19

    B.  Enclosure 27 is a substantive rule that imposes new duties and has "significant effects" on individual private interests ........................................ 21

    C.  None of the military exceptions to the APA excuse the Secretary's noncompliance ...................................................................................................... 26

    D.  There is no good cause excusing the Secretary's noncompliance .................... 28

**CONCLUSION** ........................................................................................................................ 29

# TABLE OF AUTHORITIES

## Case(s)

*A.L.A. Schechter Poultry Corp. v. United States*,
  295 U.S. 495 (1935) ........................................................................... 11, 17

*Ameron, Inc. v. U.S. Army Corps of Eng'rs*,
  809 F.2d 979 (3d Cir. 1986) ................................................................ 8

*City of New York v. Permanent Mission of India*,
  618 F.3d 172 (2d Cir. 2010) ............................................................... 26

*City Club of New York v. United States Army Corps of Eng'rs*,
  -- F. Supp. 3d --, 2017 WL 1102667 (S.D.N.Y. Mar. 23, 2017)............................. 30

*Doe v. Rumsfeld*,
  297 F. Supp. 2d 119 (D.D.C. 2003) ...................................................... 26, 27

*Drake v. Honeywell, Inc.*,
  797 F.2d 603 (8th Cir. 1986) ............................................................. 13

*Heartland Reg'l Med. Ctr. v. Sebelius*,
  566 F.3d 193 (D.C. Cir. 2009) ............................................................ 19

*Indep. Guard Ass'n, Local No. 1 v. O'Leary*,
  57 F.3d 766 (9th Cir. 1995) ........................................................... 27, 28

*J.W. Hampton, Jr., & Co. v. United States*,
  276 U.S. 394 (1928) ...................................................................... 5, 9

*Lewis-Mota v. Sec'y of Labor*,
  469 F.2d 478 (2d Cir. 1972) .............................................................. 24

*Mistretta v. United States*,
  488 U.S. 361 (1989) ..................................................................... 5, 10

*Mobil Oil Corp. v. Dep't of Energy*,
  547 F. Supp. 1246 (N.D.N.Y. 1982) ....................................................... 29

*Nixon v. Adm'r of Gen. Servs.*,
  433 U.S. 425 (1977) ....................................................................... 3

*Pan. Ref. Co. v. Ryan*,
  293 U.S. 388 (1935) ...................................................................... 17

*Pinto v. Menifee*,
  04-5839, 2004 WL 3019760 (S.D.N.Y. Dec. 29, 2004) ...................................*passim*

*Prudential-Maryland Joint Venture Co. v. Lehman,*
    590 F. Supp. 1390 (D.D.C. 1984) ........................................................................ 24

*Reynolds Metals Co. v. Rumsfeld,*
    564 F.2d 663 (4th Cir. 1977) ................................................................ 19, 22, 23

*Sepulveda v. Block,*
    782 F.2d 363 (2d Cir. 1986) ................................................................................ 28

*Touby v. United States,*
    500 U.S. 160 (1991) ............................................................................................ 16

*Turner v. Phillips,*
    08-133, 2009 WL 692195 (N.D.W. Va. Jan. 12, 2009) ............................. 19, 20, 21

*United States v. Ambert,*
    561 F.3d 1202 (11th Cir. 2009) .......................................................................... 15

*United States v. Arch Trading Co.,*
    987 F.2d 1087 (4th Cir. 1993)...................................................................... 10, 17

*United States v. Caver,*
    41 M.J. 556 (N-M Ct. Crim. App. 1994) .............................................................. 12

*United States v. Cooper,*
    750 F.3d 263 (3d Cir. 2014) ................................................................... *passim*

*United States v. Fernandez,*
    710 F.3d 847 (8th Cir. 2013) ........................................................................ 15, 16

*United States v. FMC Corp.,*
    717 F.2d 775 (3d Cir. 1983) ................................................................................ 8

*United States v. Guzman,*
    591 F.3d 83 (2d Cir. 2010) ........................................................................ 8, 10, 14

*United States v. Hester,*
    07-376, 2008 WL 351677 (N.D.N.Y. Feb. 7, 2008) ........................................ 7, 8, 22

*United States v. Lott,*
    750 F.3d 214 (2d Cir. 2014) .............................................................................. 15

*United States v. Moore,*
    43 F.3d 568 (11th Cir. 1994) ........................................................................ 3, 9, 18

*United States v. Neblock,*
   45 M.J. 191 (C.A.A.F. 1996) ................................................................ 7

*United States v. Nichols,*
   784 F.3d 666 (10th Cir. 2015) .............................................................. 7

*United States v. Quinones,*
   313 F.3d 49 (2d Cir. 2002) ................................................................... 4

*United States v. Richardson,*
   754 F.3d 1143 (9th Cir. 2014) .............................................................. 8

*United States v. Ross,*
   848 F.3d 1129 (D.C. Cir. 2017) ............................................... 19, 26, 30

*United States v. Sherman,*
   784 F. Supp. 2d 618 (W.D.Va. 2011) ............................................ 6, 8, 9

*United States v. Stevens,*
   578 F. Supp. 2d 172 (D. Me. 2008) ................................................ 5, 14

*United States v. Talkington,*
   73 M.J. 212 (C.A.A.F 2013) ............................................................... 18

*United States v. Torrance,*
   72 M.J. 607 (A.F. Ct. Crim. App. 2013) ....................................*passim*

*United States v. Whaley,*
   577 F.3d 254 (5th Cir. 2009) .............................................................. 15

*Wayman v. Southard,*
   23 U.S. 1 (1825) ................................................................................... 6

*White v. Shalala,*
   7 F.3d 296 (2d Cir. 1993) .............................................................*passim*

*Wright v. F.B.I.,*
   02-915, 2006 WL 2587630 (D.D.C. July 31, 2006) ............................ 24

*Zhang v. Slattery,*
   55 F.3d 732 (2d Cir. 1995) ................................................................ 28

## Constitutional Provisions

U.S. Const. art. I, § 1 ............................................................................... 2, 6

## Statutes & Rules

5 U.S.C. § 551.............................................................................................*passim*

5 U.S.C. § 553 ..................................................................... 19, 21, 26, 28

8 U.S.C. § 1101 ......................................................................................... 29

10 U.S.C. § 920 ........................................................................................... 1

10 U.S.C. § 934 ........................................................................................... 1

10 U.S.C. § 951 ..................................................................................*passim*

18 U.S.C. § 2250 ................................................................................*passim*

42 U.S.C. § 16901 ................................................................. 10, 13, 14, 24

42 U.S.C. § 16911 ..............................................................................*passim*

42 U.S.C. § 16913................................................................... 8, 14, 15

Dept. of Commerce, Justice, & State, the Judiciary, & Related Agencies
Appropriations Act, 1998, PL 105–119, Nov. 26, 1997, 111 Stat 2440................. 1, 13

## Rules & Federal Regulations

32 C.F.R. pt. 336 (2002).......................................................................... 20

67 Fed. Reg. 35,507 (May 20, 2002) ........................................................ 27

Fed. R. Crim. P. 12(b)(3)(B) ..................................................................... 4

## Other Authorities

Kenneth Culp Davis, *Administrative Law Treatise* § 7.10 (2d ed. 1979) .................. 21

DODI 1325.7 (2001), *available at* https://biotech.law.lsu.edu/blaw/dodd/corres
/pdf/i13257_071701/i13257p.pdf ....................................................................*passim*

DODI 1325.07, Encl. 2, App'x 4 (2013), *available at* http://jpp.whs.mil/Public/docs/
04-Meetings/sub-20150827/15_DoD_SexOffenderList_QualifyingOffenses_
DoDI1325_07_Encl2_App4_RSO.pdf............................................................. 2, 3, 18

Eugene R. Fidell, *Military Commissions & Administrative Law*, 6 Green Bag 2d 379
(2003) ............................................................................................. 20, 27

Andrew D. Flor, *Sex Offender Registration Laws and the Uniform Code of Military Justice: A Primer*, Army Lawyer (2009), https://www.loc.gov/ rr/frd/Military_Law/pdf/08-2009.pdf...................................................................... 2, 19, 25

Inspector General, Dept. of Defense, *Evaluation of DoD Compliance with the Sex Offender Registration and Notification Act* (2014), http://www.dodig.mil/ pubs/documents/DODIG-2014-103.pdf............................................................ 7, 12

Manual for Courts-Martial United States (2016), http://jsc.defense.gov/ Portals/99/Documents/MCM2016. pdf?ver=2016-12-08-181411-957 ................... 22

Office of the Under Secretary of Defense, Memo. from Deputy Under Sec. of Def., *Sexual Offense Reporting Requirements*, (Nov. 16, 2009), a*vailable at* http://www.militarylawyers.com/uploads/DoD_Updated_Sexual_Offense_Reporting_Requirements.pdf ............................................................................... 12

## PRELIMINARY STATEMENT

A 20-year veteran of the U.S. Navy, Salvador Diaz is charged in a one-count indictment with failure to register as a sex offender under Title I of the Adam Walsh Act, *i.e.*, the Sex Offender Registration and Notification Act ("SORNA"), in violation of 18 U.S.C. § 2250.  The SORNA charge is predicated upon Mr. Diaz's conviction in 2000 in a court-martial on three counts of rape and two counts of indecent acts, in violation of Articles 120 and 134 of the Uniform Code of Military Justice ("UCMJ"), 10 U.S.C. §§ 920, 934.

Following Mr. Diaz's early release in 2007, he moved to New York, where he was designated by the state Board of Examiners of Sex Offenders as an offender required to register.  Mr. Diaz subsequently registered as required in New York.

Earlier this year, Mr. Diaz was charged with failing to register from March 2015 to January 2017, in violation of § 2250.  *See* Dkt. 12.  Section 2250 makes it a crime for a person to "knowingly fail[] to register or update a registration" where he "is a sex offender . . . by reason of a conviction under Federal law (including the Uniform Code of Military Justice)."  18 U.S.C. § 2250(a)(2)(A), (3).  SORNA defines a "sex offender" as someone who has been "convicted of a sex offense."  42 U.S.C. § 16911(1).  As relevant here, a qualifying "sex offense" is "a military offense specified by the Secretary of Defense under section 115(a)(8)(C)(i) of Public Law 105-119 (10 U.S.C. § 951 note)."  *Id.* § 16911(5)(A)(iv).

"The Secretary of Defense complied [with § 16911(5)(A)(iv)] by publishing" Enclosure 27 to Department of Defense Instruction ("DODI") 1325.7.[1]  Andrew D. Flor, *Sex Offender Registration Laws and the Uniform Code of Military Justice:  A Primer*, Army Lawyer 3 n.24 (2009), https://www.loc.gov/rr/frd/Military_Law/pdf/08-2009.pdf.  Enclosure 27 identifies the UCMJ offenses that the Secretary has decided qualify as "sex offenses" under SORNA.  *Id.*; *see* DODI 1325.7 (2001), *available at* https://biotech.law.lsu.edu/blaw/dodd/corres/pdf/i13257_071701/i13257p.pdf.  Articles 120 and 134 are among those that the Secretary specified as "sex offenses" triggering SORNA liability.  *See id.*

Mr. Diaz moves to dismiss the instant indictment, because § 16911(5)(A)(iv)—the SORNA provision giving rise to his alleged liability for failure to register based on prior UCMJ convictions—is unconstitutional.  Specifically, the statute violates the separation of powers prescribed by Art. I, § 1 and the non-delegation doctrine, by endowing the Secretary with legislative authority to define which military crimes constitute "sex offenses" giving rise to SORNA liability under federal criminal law without any intelligible limiting principle.  In other words, § 16911(5)(A)(iv) gives to the executive branch Congress's "exclusive power" to "prescribe crimes" without restriction.  *United States v. Moore*, 43 F.3d 568, 571 (11th Cir. 1994).  Mr. Diaz also moves for dismissal on the ground that Enclosure 27—without which his UCMJ

---

[1]  Later versions of the Secretary's list of specified sex offenses were published in Appendix 4 to Enclosure 2 of DODI 1325.07.  *See, e.g.*, DODI 1325.07, Encl. 2, App'x 4 (2013), *available at* http://jpp.whs.mil/Public/docs/04-Meetings/sub-20150827/15_DoD_SexOffenderList_QualifyingOffenses_DoDI1325_07_Encl2_App4_RSO.pdf.

convictions would not qualify as "sex offenses" for SORNA purposes—was promulgated in violation of the Administrative Procedure Act ("APA") and thus may not support a SORNA charge.

Mr. Diaz's challenge appears to be one of first impression and presents important questions about (i) Congress's ability to delegate its "exclusive power" to "prescribe crimes," *Moore*, 43 F.3d at 571, and (ii) the Department of Defense's ("DoD") compliance with the carefully crafted checks-and-balances imposed by the Constitution and the APA—both of which are critical restraints on the "awesome" power of the executive branch. *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 551 (1977).

The challenges that Mr. Diaz raises are important not only because of the Constitutional questions at stake. They are equally consequential in light of the repercussions that the Secretary's actions have for military service members. There is no question that "the decision to make SORNA's registration requirements applicable to [a class of] offenders"—as the Secretary has been authorized to do under § 16911(5)(A)(iv)—"is a weighty one[,] particularly for the class of [] offenders affected by that [delegated] decision," *United States v. Cooper*, 750 F.3d 263, 272 (3d Cir. 2014), given the "significant" and long-lasting consequences of sex offender registration, *United States v. Torrance*, 72 M.J. 607, 615 (A.F. Ct. Crim. App. 2013). *See* DODI 1325.07, Encl. 2, App'x 4 ("[sex offender registration] may be the most significantly stigmatizing and longest lasting effect arising from the fact of conviction")

Because § 16911(5)(A)(iv) fails to pass constitutional muster, and because Enclosure 27 does not comply with the APA , neither can support a SORNA charge. Accordingly, the indictment here should be dismissed for failure to state an offense. *See* Fed. R. Crim. P. 12(b)(3)(B); *United States v. Quinones*, 313 F.3d 49, 58-60 (2d Cir. 2002).

## ARGUMENT

### I.   42 U.S.C. § 16911(5)(A)(iv) violates Art. I, § 1 of the Constitution and the non-delegation doctrine.

The U.S. Constitution provides that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States."  U.S. Const. art. 1, § 1.  "A necessary corollary to this provision is the non-delegation doctrine, which is 'rooted in the principle of separation of powers that underlies our tripartite system of Government,' and stipulates that 'Congress generally cannot delegate its legislative power to another Branch.'"  *United States v. Stevens*, 578 F. Supp. 2d 172, 182 (D. Me. 2008) (quoting *Mistretta v. United States,* 488 U.S. 361, 371–72 (1989)).  Although Congress may in certain circumstances delegate its legislative authority, it may only do so if it "lay[s] down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform."  *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928); *see also Mistretta*, 488 U.S. at 375-77 (the "separation-of-powers inquiry [] focus[]es on the extent to which [a provision of law] prevents [a] Branch from accomplishing its constitutionally assigned functions").

As relevant here, § 16911(5)(A)(iv) provides that the "Secretary of Defense shall specify" the military offenses that constitute "sex offense[s]" giving rise to SORNA liability.  In other words, through § 16911(5)(A)(iv), "Congress directed the Secretary to 'specify categories of conduct punishable under the Uniform Code of Military Justice which are sex offenses . . . and such other conduct as the Secretary deems appropriate for inclusion for [this] purpose[ ].'"  *Torrance*, 72 M.J. at 615

5

(quoting 10 U.S.C. § 951, reviser's note).  Pursuant to this authority, the Secretary promulgated Enclosure 27, which specified the "offenses under the Uniform Code of Military Justice [that] trigger requirements to notify State and local law enforcement agencies and to provide information to inmates concerning sex offender registration requirements."  DODI 1325.7, Encl. 27; *see also Torrance*, 72 M.J. at 615.

In delegating the to the Secretary the authority to define what constitutes a "sex offense" (and, by extension, a SORNA violation), Congress violated Art. I, § 1 and the non-delegation doctrine by giving the executive branch the legislative power to define the element of a crime without articulating any "intelligible principle" to guide the Secretary in doing so.  Absent such a principle, the Secretary was left with unfettered discretion to legislate, which is Congress's exclusive purview.  *See Wayman v. Southard*, 23 U.S. 1, 42-43 (1825) (nondelegable powers are those "which are strictly and exclusively legislative") (Marshall, J.).

A.   **Section 16911(5)(A)(iv) impermissibly delegates "legislative power" to the Secretary to prescribe the "sex offense" element of a SORNA failure to register offense, 18 U.S.C. § 2250.**

"Under current non-delegation doctrine, the court must first 'asses[s] whether a statute delegates legislative power' to determine what authority the statute confers" and whether it passes constitutional muster.  *United States v. Sherman*, 784 F. Supp. 2d 618, 621 (W.D.Va. 2011) (quoting *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 465 (2001)).

Section 16911(5)(A)(iv)'s plain language authorizes the Secretary to legislate by providing that it is the Secretary—not Congress—who will determine which military offenses constitute "sex offenses" and, as a result, SORNA violations.  *See* 42

U.S.C. § 16911(5)(A)(iv) ("the term 'sex offense' means . . . a military offense *specified by the Secretary of Defense*") (emphasis added).  In other words, the statute endows the Secretary with the authority to define one of the key elements of a SORNA offense and without which a SORNA conviction cannot lie.  *See United States v. Hester*, 07-376, 2008 WL 351677, at *1 (N.D.N.Y. Feb. 7, 2008) (proof that defendant "was a sex offender as defined under SORNA" is an "essential element" of § 2250 violation); 42 U.S.C. § 16911(1) ("sex offender" is "an individual who was convicted of a *sex offense*") (emphasis added); *see also* Inspector General, Dept. of Defense, *Evaluation of DoD Compliance with the Sex Offender Registration and Notification Act* 3-4, 43, 47 (2014), http://www.dodig.mil/pubs/documents/DODIG-2014-103.pdf  ("Current  SORNA legislation . . . require[s] the Department to identify and publish [qualifying military offenses], as set forth in Enclosure 27.") (hereinafter "Inspector General Rep.").  But, defining elements of a crime is within the "exclusive" purview of the legislative, not the executive, branch.  *United States v. Neblock*, 45 M.J. 191, 195 n.3 (C.A.A.F. 1996); *see United States v. Nichols*, 784 F.3d 666, 668 (10th Cir. 2015) (Gorsuch, J., dissenting) ("If the separation of powers means anything, it must mean that the prosecutor isn't allowed to define the crimes he gets to enforce.").

As such, § 16911(5)(A)(iv) is readily distinguishable from other SORNA provisions that courts have found to permissibly delegate authority to the executive branch.  For example, numerous courts have rejected challenges to the provision authorizing the Attorney General to determine SORNA's retroactive application, 42 U.S.C. § 16913(d).  *See United States v. Richardson*, 754 F.3d 1143, 1145 (9th Cir.

2014) (collecting cases).  As one court explained, in § 16912(b), Congress "gave the Attorney General the authority to 'issue guidelines and regulations to interpret and implement SORNA,' and[, in § 16913(d), the authority] to specify the applicability' of SORNA's registration requirements 'to sex offenders convicted before' SORNA's enactment date."  *Sherman*, 784 F. Supp. 2d at 621.  Courts have found this delegation to be constitutionally sound, because "[t]he aspect left to the Attorney General was the *characteristically executive responsibility* of determining to whom that offense should apply."  *Id.* at 621-22 (emphasis added); *see also United States v. Guzman*, 591 F.3d 83, 91-93 (2d Cir. 2010).

By contrast, § 16911(5)(A)(iv) gives the Secretary—not Congress—the authority to "define[] the elements" of  § 2250 by requiring the Secretary to "enumerate," *Sherman*, 784 F. Supp. 2d at 921, what constitutes a "sex offense"— without which element there can be no SORNA violation.  *See Hester*, 2008 WL 351677, at *1.  Congress therefore went beyond merely giving the executive branch the "characteristically executive responsibilit[ies]" of "interpreting" and "implementing" law. *Sherman*, 784 F. Supp. 2d at 621.  Instead, it gave the executive the authority to "define" an element of a criminal offense and thereby "create" criminal liability.  *See Ameron, Inc. v. U.S. Army Corps of Eng'rs*, 809 F.2d 979, 989 (3d Cir. 1986) (the executive branch's function is to "*[i]nterpret[]* a law enacted by Congress to implement the legislative mandate") (emphasis added); *United States v. FMC Corp.*, 717 F.2d 775, 780 n.13 (3d Cir. 1983) (the "legislative function [is] prescribing generally applicable rules" (*i.e.*, "enumeration"); the "executive function

8

[is] enforcing legal norms" (*i.e.*, "implementation")) (citation and internal quotation marks omitted).

Indeed, Congress itself exercised this very legislative authority to "prescribe crimes," *Moore*, 43 F.3d at 571, in the parallel definitions of "sex offense" provided for in § 16911(5)(A).  *See* 42 U.S.C. § 16911(5)(A)(i)-(iii), (v) ("the term 'sex offense means—(i) a criminal offense that has an element involving a sexual act or sexual contact with another; (ii) a criminal offense that is a specified offense against a minor; (iii) a Federal offense (including an offense prosecuted under section 1152 or 1153 of Title 18) under section 1591, or chapter 109A, 110 (other than section 2257, 2257A, or 2258), or 117, of Title 18 . . . or (v) an attempt or conspiracy to commit an offense described in clauses (i) through (iv)").  It is therefore clear that the power delegated in § 16911(5)(A)(iv) is, in fact, legislative authority to define the elements of a criminal offense—which is not "characteristically [an] executive responsibility." *Sherman*, 784 F. Supp. 2d at 622.

### B.   Neither § 16911(5)(A)(iv) nor any other SORNA provision articulate an "intelligible principle" to guide the Secretary in exercising the delegated authority to define "sex offense."

A delegation of legislative authority is constitutionally sound only "if Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority."  *Guzman*, 591 F.3d at 92-93 (citing *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 105 (1946)).  "In other words, Congress needs to provide the delegated authority's recipient an 'intelligible principle' to guide it." *Id.* at 93 (citing *J.W. Hampton, Jr., & Co.,* 276 U.S. at 409.  "[A]n unconstrained delegation by Congress of authority to define criminal conduct [] run[s] afoul of the

constitutionally-based nondelegation doctrine." *United States v. Arch Trading Co.*, 987 F.2d 1087, 1092 (4th Cir. 1993) (citing *Mistretta*, 488 U.S. at 371-74).

As set forth below, although § 16911(5)(A)(iv) "clearly delineates . . . the public agency which is to apply" the authority in question here (DoD), it does not prescribe "the boundaries of [this] authority." *Guzman*, 591 F.3d at 92-93.   Nor does the "general policy" underlying SORNA, as articulated by Congress, 42 U.S.C. § 16901, provide a sufficient limiting principle.   These shortcomings are fatal to § 16911(5)(A)(iv)'s ability to withstand constitutional scrutiny, because it is "'clear that Congress cannot provide[] literally no guidance for the exercise of discretion'" it has delegated.  *Cooper*, 750 F.3d at 269 (quoting *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 474 (2001)) (alteration in original).

*First*, neither the text of § 16911(5)(A)(iv), nor any other SORNA provision, provide the Secretary with any guidance in determining which military offenses constitute "sex offenses" triggering SORNA liability.  *See* 42 U.S.C. §§ 16901-1690, 16911-16929.  The only "guidance"—insofar as it could even by described as such—is the plain language of § 16911(5)(A)(iv), *i.e.*, "'sex offense' means . . . a military offense specified by the Secretary of Defense under section 115(a)(8)(C)(i) of Public Law 105-119 (10 U.S.C. 951 note)".

But this language does actually provide an "intelligible" limiting principle, because it in no way circumscribes or limits which UCMJ offenses the Secretary may deem to be a "sex offense."   Indeed, courts have recognized that § 16911(5)(A)(iv) provides the Secretary with unconstrained power to define which UCMJ crimes

qualify as "sex offenses." *See, e.g.*, *Torrance*, 72 M.J. at 615 ("Congress directed the Secretary to 'specify categories of conduct punishable under the Uniform Code of Military Justice which are sex offenses . . . *and such other conduct as the Secretary deems appropriate for inclusion* for [this] purpose[ ].'") (quoting 10 U.S.C. § 951, reviser's note) (emphasis added).  But "Congress cannot delegate legislative power to the [executive branch] to exercise an unfettered discretion to make whatever laws [the executive branch] thinks may be needed or advisable. . . ."  *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 538-42 (1935).

That the term "sex offense" is not *ipso facto* an "intelligible principle" is clear after examining the offenses that the Secretary has historically included on the list of SORNA-qualifying UCMJ offenses.  The offenses specified in Enclosure 27 have varied over the years and at times included offenses that involve no aspect of sexual conduct.  For example, the Secretary included on the original list of "sex offenses" (effective until 2009) violations of the UCMJ general offense statute (Article 134) predicated solely upon "indecent language to a minor."  *See* DODI 1325.7, Encl. 27. But this offense plainly would not qualify as a "sex offense" under Congress's definitions of the element.  *Compare* 42 U.S.C. § 16911(5)(A)(i) ("'sex offense' means . . . a criminal offense that has an element involving a sexual act or sexual contact with another . . . [or] a criminal offense that is a specified offense against a minor"), and *id.* § 16911(7) (defining "specified offense against a minor" to include those which involve sexual conduct, child pornography, or kidnapping), *with* U.C.M.J. Art. 134 ¶ 89 (2000 ed.) (person guilty of "indecent language" where he (i) "orally or in writing

communicated to another person in certain language"; (ii) the other person "was a child under the age of 16"; (iii) "such language was indecent," *i.e.*, "grossly offensive to modesty, decency, or propriety, or shocks the moral sense, because of its vulgar filthy or disgusting nature, or its tendency to incite lustful thought," or "tends reasonably to corrupt morals or incite libidinous thoughts"; and (iv) "the conduct . . . was to the prejudice and good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forced"); *see, e.g.*, *United States v. Caver*, 41 M.J. 556, 559 (C.C.A. 1994) (calling female a "bitch" constituted using "indecent language" in violation of Article 134).

In 2009, Enclosure 27 was revised and most of the Article 134 general offense crimes—including indecent language to a minor—were removed (though only for individuals whose convictions post-date 2007). *See* Office of the Under Secretary of Defense, Memo. from Deputy Under Sec. of Def., *Sexual Offense Reporting Requirements*, (Nov. 16, 2009), http://www.militarylawyers.com/uploads/DoD_Updated_Sexual_Offense_ Reporting_Requirements.pdf; Inspector General Rep. at 58-59. The only general offenses that remained on the list were those with a sexual conduct nexus, *e.g.*, that had "an element involving the sexual contact [of the defendant] with another," or prostitution, child pornography, or other sexual conduct. *See id.*

The Secretary's revisions to Enclosure 27, and the incongruity between the offenses the Secretary has deemed to be "sex offenses" and those qualifying as such under Congress's definition, underscore the fact that § 16911(5)(A)(iv) lacks an

12

"intelligible principle." The Secretary's revisions to Enclosure 27 over time also highlight the uncertainty that the lack of an intelligible principle has injected into the SORNA statutory scheme for individuals with UCMJ convictions: namely, that individuals with UCMJ convictions may be liable under SORNA based on a broader set of prior crimes that their counterparts convicted under civilian law would be, or even different set of offenses than their fellow service members with later-in-time UCMJ convictions.

Nor is § 16911(5)(A)(iv) saved from constitutional defect by its provision that military offenses qualify as "sex offenses" only if "specified by the Secretary of Defense *under section 115(a)(8)(C)(i) of Public Law 105-119 (10 U.S.C. 951 note).*" *Id.* (emphasis added). The reviser's note simply gives the Secretary broad authority to "specify categories of conduct punishable under the Uniform Code of Military Justice." Dept. of Commerce, Justice, & State, the Judiciary, & Related Agencies Appropriations Act, 1998, PL 105–119, Nov. 26, 1997, 111 Stat 2440. It in no way circumscribes or otherwise limits the Secretary in deciding which military offenses qualify as "sex offenses" giving rise federal criminal liability under SORNA. In fact, if anything, the breadth of the note's language underscores that § 16911(5)(A)(iv) improperly delegates to the executive branch Congress's exclusive "power to make law," free of any intelligible limitation or guiding principle. *Drake v. Honeywell, Inc.*, 797 F.2d 603, 607 (8th Cir. 1986).

*Second*, Congress's articulation of SORNA's general purpose in § 16901 also fails to impose a sufficient "intelligible principle" on the authority delegated in

13

§ 16911(5)(A)(iv).  *See* 42 U.S.C. § 16901 (purpose of SORNA is to "protect the public from sex offenders and offenders against children . . . in response to [] vicious attacks by violent predators," and to "establish[] a comprehensive national system for registration of those offenders."); *see also Cooper*, 750 F.3d at 271 ("The First section of SORNA makes clear that the Act's aim is to establish a comprehensive national sex offender registry in order to protect children and the public at large from sex offenders.") (citing 42 U.S.C. § 16901).  The fact that early iterations of Enclosure 27 included violations of the UCMJ general offense statute with no sexual conduct nexus whatsoever (and which would not qualify as "sex offenses" under Congress's own definitions of the term) confirms that SORNA's general purpose fails to provide an adequate "intelligible principle" to guide the Secretary in exercising the authority delegated in  § 16911(5)(A)(iv).   *See supra* at 11-12.

While the general purpose set forth in § 16901 has been found to provide an "intelligible principle" limiting the Attorney General in exercising its authority to determine SORNA's retroactivity under § 16913(d), *see, e.g.*, *Stevens*, 578 F. Supp. 2d at 183-84, that authority (unlike the authority at issue here) was also further limited by several other SORNA provisions.  For example, in *Guzman*, 591 F.3d at 93, the Second Circuit held that § 16913(d) passed constitutional muster because Congress also "included [in SORNA other] specific provisions delineating what crimes require registration, 42 U.S.C. § 16911; where, when, and how an offender must register, *id.* § 16913; what information is required of registrants, *id.* § 16914; and the elements

and penalties for the federal crime of failure to register, 18 U.S.C. § 2250." *Id.*; *accord United States v. Lott*, 750 F.3d 214, 220 (2d Cir. 2014).

Other circuits have similarly upheld § 16913(d) against the same challenge, finding that it withstands constitutional scrutiny because (unlike § 16911(5)(A)(iv)) it reserves for Congress the authority to "identif[y] the crimes that require registration." *Cooper*, 750 F.3d at 272; *see, e.g.*, *United States v. Ambert*, 561 F.3d 1202, 1214 (11th Cir. 2009) ("The Attorney General is left only with the discretion to determine whether this statute [§ 16913(d)] and all of its attendant requirements articulated by the legislature apply to a particular, capped class of offenders-*i.e.*-those convicted prior to July 27, 2006."); *Cooper*, 750 F.3d at 272 (under § 16913(d), "Attorney General can only determine the specific question of whether SORNA's registration requirements apply to pre-SORNA offenders"); *United States v. Fernandez*, 710 F.3d 847, 850 (8th Cir. 2013) (section 16913(d) "is a considerably more limited and narrow question than, for example, Congress' decision to allow the United States Sentencing Commission to create federal sentencing guidelines"); *United States v. Whaley*, 577 F.3d 254, 264 (5th Cir. 2009) ("[T]he authority delegated [to the Attorney General] in [§ 16913(d)] is relatively small"); *Ambert*, 561 F.3d at 1213 (section 16913(d) "constrict[ed] the Attorney General's discretion to a narrow and defined category").

No similar limiting guidance is offered in either the text of section 16911(5)(A)(iv) or anywhere else in the Act. *See supra* at 10. Thus, § 16911(5)(A)(iv) does the opposite of what courts have determined saves § 16913(d) from

constitutional defect:  it gives the executive branch the unfettered authority "identif[y] the crimes that require [SORNA] registration," *Cooper*, 750 F.3d at 272, and, as far as UCMJ convictions are concerned, leaves Congress out of the decision entirely.

Accordingly, § 16911(5)(A)(iv) does not delegate the type of "relatively narrow," *Fernandez*, 710 F.3d at 850, authority to define criminal conduct that courts have found to be constitutionally permissible.  For example, in *Touby v. United States*, 500 U.S. 160, 163-66 (1991), the Supreme Court upheld a delegation of authority to the Attorney General to specify which substances may give rise to liability for criminal possession by adding them to the controlled substance schedule.  The Supreme Court concluded that the statute "meaningfully constrain[ed] the Attorney General's discretion to define criminal conduct by":  (i) specifying that the Attorney General must first determine that adding the substance to the schedule is "necessary to avoid an imminent hazard to the public safety"; (ii) dictating the factors that the Attorney General must consider in deciding whether to add a substance to the schedule; (iii) requiring the Attorney General to publish 30-day notice of the proposed scheduling of the substance and to consider any comments from the Secretary of Health and Human Services; and (iv) requiring the Attorney General to make certain findings regarding the effects of the substance.  *Id.*

Similarly, in *Mistretta*, 488 U.S. at 375-77, the Supreme Court upheld Congress's delegation of authority to the U.S. Sentencing Commission to create federal sentencing guidelines where Congress:  (i) prescribed the specific tool—*i.e.*,

the guidelines system—for the Commission to use in regulating sentencing; (ii) "directed [the Commission] to consider [specific] factors"; (iii) "prohibit[ed] the Commission from considering" certain offender characteristics; and (iv) "provid[ed] even more detailed guidance . . . about categories of offenses and offender characteristics." *See also, e.g.*, *Arch Trading Co.*, 987 F.2d at 1089, 1093 (upholding delegation to President of authority to define by executive order what qualifies as criminal conduct under the International Emergency Economic Powers Act, because the delegation "me[t] the standard of constraint applied in *Touby*" by: (i) "defin[ing] the specific circumstances in which the President may act and to what extent"; (ii) limiting the President's exercise of authority to certain specified circumstances; and (iii) requiring the President "to consult with Congress *before*, if possible, exercising the powers conferred, to explain his acts in specified respects, and to report regularly thereafter") (emphasis in original).

In sum, then, the delegation of authority in § 16911(5)(A)(iv) is much more akin to the delegations of legislative power that the Supreme Court has found to violate the nondelegation doctrine. *See, e.g.*, *Pan. Ref. Co. v. Ryan,* 293 U.S. 388, 430 (1935) (delegation of authority to executive to issue orders regarding transportation of petroleum unconstitutional because "Congress [] declared no policy, [] established no standard, [] laid down no rule," *e.g.*, "no requirement, no definition of circumstances and conditions in which the transportation is to be allowed or prohibited"); *A.L.A. Schechter Poultry Corp.,* 295 U.S. at 538-42, 551 (reversing criminal convictions because statute under which defendants were prosecuted unconstitutionally

17

delegated Congress's legislative authority to executive by "set[ting] up no standards, aside from the statement of the general aims of rehabilitation, correction, and expansion").

As in those cases, in enacting § 16911(5)(A)(iv), Congress "sail[ed] [too] close to the wind with regard to the principle that legislative powers are nondelegable," *Cooper*, 750 F.3d at 272, by delegating its authority to "prescribe crimes," *Moore*, 43 F.3d at 571, with no intelligible limiting principle.  As such, the Court should find that § 16911(5)(A)(iv) is unconstitutional; the rule promulgated by DoD pursuant to this statute (*i.e.*, Enclosure 27) is invalid; and the indictment thus fails to state an offense.

It is especially important that the Court rein in Congress in this instance because "[t]he decision to make SORNA's registration requirements applicable to [a class of] offenders"—which Congress has given away to the Secretary with no intelligible guidance—"is a weighty one[,] particularly for the class of [] offenders affected by that [delegated] decision." *Cooper*, 750 F.3d at 272; *see* DODI 1325.07, Encl. 2, App'x 4 ("[sex offender registration] may be the most significantly stigmatizing and longest lasting effect arising from the fact of conviction"); *United States v. Talkington*, 73 M.J. 212, 218 (C.A.A.F. 2014) (sex offender registration "is a particularly severe penalty"; "the automatic result of [] registration . . . makes it difficult to divorce the penalty from the conviction"); *Torrance*, 72 M.J. at 611 ("The consequence[] of sex offender registration is no less significant than deportation[.]").

18

## II.     The Secretary of Defense promulgated Enclosure 27 in violation of the Administrative Procedure Act, 5 U.S.C. § 553.

Even if the Court concludes that Enclosure 27 was promulgated pursuant to a valid delegation of power, the indictment still should be dismissed because the rule was issued in violation of the APA.[2]   *Id.*   Despite a searching review of the Federal Register and other relevant sources, there is no evidence that Enclosure 27 was at any time subject to APA procedures, including notice-and-comment.   Nor did the Secretary ever issue a statement of "good cause" explaining this failure.

The Secretary's failure to comply with the APA requires vacatur of Enclosure 27, and, in turn, dismissal of the SORNA charge for failure to state an offense.   *See Heartland Reg'l Med. Ctr. v. Sebelius*, 566 F.3d 193, 199 (D.C. Cir. 2009) ("Failure to provide the required notice and to invite public comment . . . is a fundamental flaw that normally requires vacatur of the rule."); *United States v. Ross*, 848 F.3d 1129, 1131-37 (D.C. Cir. 2017) (dismissing SORNA indictment where rule upon which it was based failed to comply with the APA).

### A.     Applicable Law

"The APA requires administrative agencies . . . to provide notice of a proposed rule and a public comment period."   *See Turner v. Phillips*, 08-133, 2009 WL 692195,

---

[2]   While Enclosure 27 was originally promulgated in 1999 (prior to SORNA's enactment in 2006), it was periodically re-issued with revisions thereafter (but never pursuant to APA procedure).   Thus, the fact that Enclosure 27 was initially promulgated before SORNA was enacted has no bearing on Mr. Diaz's APA challenge. Indeed, DoD has explicitly recognized that Enclosure 27 was (and is) intended to fulfill the DoD's obligations under § 16911(5)(A)(iv).   *See* Flor *supra* at 3 n.24.

at *2 (N.D.W. Va. Jan. 12, 2009) (citing 5 U.S.C. § 553); *see also Reynolds Metals Co. v. Rumsfeld*, 564 F.2d 663, 669 (4th Cir. 1977) (explaining that, under the APA, agency rules must be published in the Federal Register and subject to prescribed notice-and-comment procedures).  The APA applies to "substantive rule[s]," *i.e.*, those that "grant[] rights, impose[] obligations, or produce[] other significant effects on private interests." *White v. Shalala*, 7 F.3d 296, 303 (2d Cir. 1993) ("Since legislative rule-making involves the agency's delegated power to make law through rules, it is subject to the public participation and debate that notice and comment procedures provide.").  It does not apply to "interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice." *Pinto v. Menifee*, 04-5839, 2004 WL 3019760, at *12 (S.D.N.Y. Dec. 29, 2004).  "Failure to comply with the APA's notice and comment procedures renders the rule subject to the APA invalid." *Id.*

Like most administrative agencies, DoD is subject to the APA.  *See* 5 U.S.C. § 551(1) (defining agencies subject to APA); *see also Turner*, 2009 WL 692195, at *2; 32 C.F.R. pt. 336 (2002) (DoD has established a "general policy favoring notice and comment in the development of regulations having a substantial and direct impact on the public, unless a significant and legitimate interest of the Department or the public requires not following that procedure"); Eugene R. Fidell, *Military Commissions & Administrative Law*, 6 Green Bag 2d 379, 385-86 (2003) (discussing DoD notice-and-comment obligations under the APA).

In certain limited circumstances, DoD need not follow the APA in issuing rules. For example, the APA does not apply to rules concerning or issued by military

commissions, courts-martial, or those promulgated by the military "in the field in time of war or in occupied territory" or which involve a "military [] function of the United States."   5 U.S.C. §§ 551(1)(E)-(G), 553(a)(1).   And, as is the case for all administrative agencies, "the notice and comment period of the APA does not apply to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice."  *Turner*, 2009 WL 692195, at *2 (citation and quotation marks omitted).   Finally, in very limited circumstances, compliance with the APA's notice-and-comment requirements may be excused for "good cause."  *Id.* § 553(b)(3)(B).

## B.   Enclosure 27 is a substantive rule that imposes new duties and has "significant effects" on individual private interests.

The critical inquiry in determining "whether a rule is subject to [the APA's] notice and comment requirements [is] . . . whether the rule is interpretive or substantive."  *White*, 7 F.3d at 303; *see also* Kenneth Culp Davis, *Administrative Law Treatise* § 7.10 at 54 (2d ed. 1979) ("[R]ules are legislative [*i.e.*, substantive] when the agency is exercising delegated power to make law through rules, and rules are interpretive when the agency is not exercising such delegated power in issuing them.").

The Second Circuit has instructed that a "substantive" or "legislative" rule is one that "grants rights, imposes obligations, or produces other significant effects on private interests."  *White*, 7 F.3d at 303 (citations omitted).   An interpretive rule, on the other hand, "is an agency's intended course of action, it tentative view of the meaning of a particular statutory term, or internal house-keeping measures organizing agency activities."  *Id.* (citations omitted).   The "central question," then, is

21

"whether an agency is exercising its rule-making power to clarify an existing statute or regulation, or to create new law, rights, or duties in what amounts to a legislative act." *Id.*; *see also Reynolds Metals Co.*, 564 F.2d at 669 ("To draw the line between substance and procedure in the contest of administrative rulemaking, courts have generally held that notice and comment is required if the rule makes a substantive impact on the rights and duties of the person subject to regulation.").

In promulgating Enclosure 27, the Secretary exercised delegated legislative authority to define a key element of the offense of failure to register under SORNA— *i.e.*, what constitutes a "sex offense," without proof of which there can be no conviction for failure to register in violation of 18 U.S.C. § 2250. *See Hester*, 2008 WL 351677, at *1. In issuing this rule, the Secretary was free to choose from any of the more than 100 existing UCMJ offenses, without limitation. *See Torrance*, 72 M.J. at 615 ("Congress directed the Secretary to 'specify categories of conduct punishable under the Uniform Code of Military Justice which are sex offenses . . . *and* such other conduct as the Secretary deems appropriate for inclusion for [this] purpose[ ].'") (quoting 10 U.S.C. § 951, reviser's note) (emphasis added); Manual for Courts-Martial United States (2016), *available at* http://jsc.defense.gov/Portals/99/ Documents/MCM2016. pdf?ver=2016-12-08-181411-957; *see also supra* at 9-18.

Thus, in Enclosure 27, the Secretary was not simply "clarify[ing] an existing statute or regulation." *White*, 7 F.3d at 303. Rather, the Secretary was "creat[ing] new . . . duties," *id.*, through a rule that "acquire[d] the force of law," *Pinto*, 2004 WL 30197960, at *12—namely, a rule that had the effect of requiring an entire class of

individuals to comply with SORNA registration requirements and that created criminal liability for failure to do so.  Put differently, Enclosure 27 "dictate[d] a uniform, predetermined outcome that remove[d] the ability of [DoD] officials to exercise discretion on a case-by-case basis" in determining SORNA liability—a hallmark of a substantive rule.  *Id.* ("[L]ack of agency discretion also characterizes [a rule] as a substantive rather than [] interpretive [].").  That the rule similarly is "binding on [the] courts as an extension of legislative power"—by requiring the judiciary to enforce SORNA registration requirements and criminal liability for individuals with qualifying UCMJ offenses—"further underscores the substantive rather than interpretive nature of the policy."  *Id.* at *13.

Accordingly, it is simply not the case that the "impact on [Mr. Diaz or others with qualifying UCMJ convictions] would be the same" whether the rule was implemented or not.  *Cf. Reynolds Metals Co.*, 564 F.2d at 670 (rule "interpretive" and not subject to APA where "[i]t neither diminishe[d] nor increase[d] the [party's] rights and duties" and, with or without the rule, "the impact on [the party] would be the same").  Rather, as a direct consequence of Enclosure 27, Mr. Diaz and others with UCMJ convictions for offenses specified by the Secretary are subject to new "obligations" and "other significant effects on private interests," *White*, 7 F.3d at 303, than they would otherwise be absent the rule.  Those other "significant effects" are, most notably, the collateral consequence of sex offender registration, the ramifications of which are long-lasting and affect all aspects of an affected individual's lives.  *See supra* at 18.

23

Furthermore, because Enclosure 27 applies regardless of whether an individual is still in the military, the rule cannot be characterized as a mere "internal house-keeping measure[] organizing agency activities" that falls outside the scope of the APA. *White*, 7 F.3d at 303. Instead, individuals with military convictions that the Secretary deems to be "sex offenses" are saddled with an entirely new scope of duties (to register under onerous SORNA requirements) and criminal liabilities (for failure to abide by those requirements)—regardless of whether they are even still in the military and subject to it and/or DoD's authority. *Cf. Prudential-Maryland Joint Venture Co. v. Lehman*, 590 F. Supp. 1390, 1403 (D.D.C. 1984) (DoD instructions regarding defense agency procurement procedures not subject to APA because they did not have "the force and effect of law"; rather, the instructions were "designed and promulgated to provide purely internal directives for [the] agencies when conducting a procurement"); *Wright v. F.B.I.*, 02-915, 2006 WL 2587630, at \*11 (D.D.C. July 31, 2006) (DOD instruction merely amounting to an "internal guideline[]" not subject to the APA).[3]

---

[3] The fact that Enclosure 27 was promulgated as an addendum to a DoD "Instruction" has no bearing on whether it is subject to the APA's requirements. The critical inquiry is whether the rule in question is "substantive" rather than "interpretive," not what word the DoD has chosen to describe the rule. *See Lewis-Mota v. Sec'y of Labor*, 469 F.2d 478, 481-82 (2d Cir. 1972) ("[T]he label that the particular agency puts upon its given exercise of administrative power is not . . . conclusive; rather it is what the agency does in fact."); *see, e.g., Prudential-Maryland Joint Venture Co.*, 590 F. Supp. at 1403; *Wright*, 2006 WL 2587630, at \*11.

Nor can Enclosure 27 be characterized as mere guidance about the DoD's "intended course of action" or its "its tentative view of the meaning of a particular statute." *White*, 7 F.3d at 303. The Secretary promulgated Enclosure 27 to comply with § 16911(5)(A)(iv). *See* Flor *supra* at 3 n.24. The rule had immediate binding effect, and real (and serious) consequences for those affected: comply with SORNA, including its "significant" registration requirements, *see Torrance*, 72 M.J. at 611, or face criminal liability of up to ten years' imprisonment, § 2250. It was in no way "tentative." *See, e.g.*, *Pinto*, 2004 WL 3019760 (Bureau of Prisons policy prohibiting community confinement for certain offenders was a substantive rule subject to APA notice-and-comment, because it "ha[d] the force of a new law" and "therefore r[o]se[] to the level of agency rulemaking rather than mere statutory interpretation"). *Cf. White*, 7 F. 3d at 304 (agency rule governing veteran's benefits "paradigmatic example of an interpretive rule" where it "determine[d] only how the augmented portion [of a veteran's benefits] will be treated under an existing statutory provision, rather than create[d] an extra-statutory requirement").

Accordingly, the Court should find that Enclosure 27 is a substantive rule that was required—but failed—to comply with the APA. *See White*, 7 F.3d at 304 (rule deemed "invalid for non-compliance with [APA] procedures"); *Pinto*, 2004 WL 3019760, at *13 (rule issued in violation of APA's notice-and-comment requirements "void for having been adopted without such procedure"). Accordingly, the Court should also find that the rule cannot support the charge here and the indictment must be dismissed. *See, e.g.*, *Ross*, 848 F.3d at 1131-37 (dismissing SORNA indictment

predicated upon defendant's conviction for a sex offense that predated SORNA's enactment because, at the time of the alleged SORNA violation, the Attorney General had not yet issued a rule making SORNA retroactive that satisfied the requirements of the APA; the Attorney General had only issued an interim rule and guidelines, neither of which complied with the APA).

### C.  None of the military exceptions to the APA excuse the Secretary's noncompliance.

None of the "military" exceptions to the APA apply here and thus cannot excuse the Secretary's noncompliance.  *See* 5 U.S.C. §§ 551(1)(E)-(G), 553(a)(1).

*First*, the "military function" exception does not apply because Enclosure 27 does not concern anything that even arguably could be characterized as a "military function."  *See* 5 U.S.C. § 553 (a)(1).  In determining whether the agency rule in question involves a "military function"—an exception which is narrow in scope—the Court must first "look not to whether the overall nature of the agency promulgating the regulation is 'civilian' or 'military,' but to the function being regulated."  *Indep. Guard Ass'n, Local No. 1 v. O'Leary*, 57 F.3d 766, 769 (9th Cir. 1995) ("Congress intended the military function exception to have a narrow scope."); *see also City of New York v. Permanent Mission of India*, 618 F.3d 172, 201 (2d Cir. 2010) ("exceptions to [section] 553 should be narrowly construed and only reluctantly countenanced") (alteration maintained).

The "function" regulated here—registration of individuals convicted of certain UCMJ offenses—is by no means uniquely "military" in nature.  On its face, the rule has absolutely nothing to do with any type of military activity.  It creates affirmative

obligations and criminal liability under federal (not military) criminal law by defining one of the key elements of a SORNA violation, *i.e.*, what constitutes a "sex offense." And, the rule applies equally to qualifying civilians and service members alike.  As such, Enclosure 27 is distinguishable from the types of rules that courts have found regulate a "military function" and fall outside the ambit of the APA.  *See, e.g.*, *Indep. Guard Ass'n Local No. 1*, 57 F.3d at 769 ("[Department of Energy] engages in a military function when it researches and develops nuclear weapons"); *but see id.* at 770 (civilian security guards at nuclear facility do not exercise a "military function" and thus rules concerning them must be issued in compliance with APA).

The other "military" exceptions to the APA, 5 U.S.C. §§ 551(1)(F)-(G), are similarly inapplicable.  Enclosure 27 rule was not issued by, or during, a military commission or court-martial.  *See, e.g.*, *Doe v. Rumsfeld*, 297 F. Supp. 2d 119, 129 (D.D.C. 2003) (section 551(1)(F)'s exception for courts-martial and military commissions "inapplicable" where court was not asked "to review a court martial or military commission proceeding[]").[4]  Nor was Enclosure 27 promulgated by the military "in the field in time of war or in occupied territory."  5 U.S.C. § 551(1)(G). Rather, it was issued by the Secretary in peacetime, and applies equally to service

---

[4]  In any event, even rules promulgated in the Manual for Courts-Martial (including those affecting punitive matters), and rules concerning military commissions, are often subject to APA procedures such as notice-and-comment.  *See, e.g.*, Manual for Courts-Martial, Proposed Amendments, 67 Fed. Reg. 35,507, 35,507-09 (May 20, 2002) (Manual-related rules issued with notice-and-comment and published in Federal Register); Fidell *supra* at 385 (describing DoD's military commission-related rules, for which DoD has "employ[ed] normal APA notice-and-comment procedures").

members and civilians who have been convicted of a specified UCMJ offense. *See Doe*, 297 F. Supp. 2d at 129 (section 551(1)(G) did not excuse DoD's failure to comply with APA in issuing rule requiring service members and civilian contract employees to receive anthrax vaccinations because: (i) plaintiffs were "not challenging military authority exercised in the field in a time of war or in an occupied territory"; (ii) "none of the plaintiffs [were] presently in the field"; and (iii) the rule "was [issued] by the Secretary of Defense, not by commanders in the field").

Accordingly, none of the APA's "military" exceptions excuse the Secretary's failure to comply with the APA.

### D. There is no good cause excusing the Secretary's noncompliance.

Although compliance with the APA's notice-and-comment requirements may be excused for "good cause," an agency may only avail itself of this exception when it "for good cause finds (*and incorporates the finding and a brief statement of reasons therefor in the rules issued*) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest." 5 U.S.C. § 553(b)(3)(B) (emphasis added).

No good cause exists here because the Secretary did not even meet the bare minimum requirement of stating in the rule that good cause exists for noncompliance with the APA. Nor did the Secretary articulate "a brief statement of reasons thereof." *Id; see, e.g.*, *Sepulveda v.* Block, 782 F.2d 363, 366 (2d Cir. 1986); *Zhang v. Slattery*, 55 F.3d 732, 746 (2d Cir. 1995) (even "[a] mere recitation that good cause exists, coupled with a desire to provide immediate guidance, does not amount to good

cause"), *superseded on other grounds by statute*, 8 U.S.C. § 1101(a)(42); *Mobil Oil Corp. v. Dep't of Energy*, 547 F. Supp. 1246, 1268 (N.D.N.Y. 1982) ("courts have reluctantly countenanced and narrowly construed the good cause exception"; at a minimum, the APA requires "a recital of good cause"), *rev'd on other grounds*, 728 F.2d 1477 (2d Cir. 1983) (citation and internal quotation marks omitted).

\*     \*     \*

Accordingly, Enclosure 27 should be vacated and the indictment dismissed. *See City Club of New York v. United States Army Corps of Eng'rs*, -- F. Supp. 3d --, 2017 WL 1102667, at \*10 (S.D.N.Y. Mar. 23, 2017) (absent "rare circumstances," "the general rule [is] that vacatur is the appropriate remedy when an agency violates its obligations under the APA") (citation omitted); *see, e.g.*, *Ross*, 848 F.3d at 1137-37.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the indictment.

Dated:  New York, New York
     July 14, 2017

                    Respectfully submitted,

                    Federal Defenders of New York

By:   /s/ Meghan J. Gilligan
       Meghan J. Gilligan
       Annalisa Miron
       Attorneys for Defendant
        Salvador Diaz
       52 Duane Street - 10th Floor
       New York NY 10007
       Tel:  (212) 417-8700