| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #:_____<br>DATE FILED: 10/24/2018 |

------------------------------------------------------------ X
UNITED STATES OF AMERICA,                              :
                                                       :
                                                       :     17-CR-227 (VEC)
            -against-                                  :
                                                       :     MEMORANDUM
                                                       :     <u>OPINION AND ORDER</u>
SALVADOR DIAZ,                                         :
                                                       :
                          Defendant.                   :
------------------------------------------------------------ X

VALERIE CAPRONI, United States District Judge:

Defendant Salvador Diaz is charged with failure to register as a convicted sex offender, in violation of the Sex Offender Registration and Notification Act ("SORNA"), 18 U.S.C. § 2250. *See* Compl., Dkt. 1; Indictment, Dkt. 12. As required by a provision in the Adam Walsh Child Protection and Safety Act of 2006 ("Adam Walsh Act"), 18 U.S.C. § 3142(c)(1)(B), Diaz is currently subject to a curfew and electronic monitoring as conditions of his pretrial release. *See* Order (Sept. 12, 2017), Dkt. 45. Diaz, appearing *pro se*, challenges these conditions on the ground that the applicable provision in the Adam Walsh Act is unconstitutional. *See* Def.'s Mem. of Law (Mar. 2, 2018), Dkt. 61, at 11. For the following reasons, Diaz's motion is GRANTED. Diaz's curfew and electronic monitoring conditions are TERMINATED. All other conditions of pretrial release remain in effect.

## BACKGROUND

The Court assumes familiarity with the facts of this case. *See* Mem. Op. and Order (July 13, 2018), Dkt. 71, *available at* 2018 WL 3418781. In brief, Diaz was convicted at court-martial in 2000 of rape and indecent acts, requiring him to register as a sex offender under state and federal law. *See id.* at 2; Compl. ¶¶ 1, 3. Diaz served a term of imprisonment for his crime. *See* Compl. ¶ 3. Following his release, Diaz registered as a sex offender with the New York City

Police Department ("NYPD") and, for several years, annually verified his address with the NYPD, as required by New York law. *See id.* ¶¶ 3–4. In 2015 and 2016, however, Diaz allegedly failed to verify his address with the NYPD. *See id.* ¶ 4. At around the same time, Diaz moved to New Jersey and, subsequently, to Virginia, allegedly without notifying the authorities of his change-of-residence and without re-registering as a sex offender in those states. *See id.* ¶ 6; Gov. Ltr. (July 27, 2018), Dkt. 74, at 4.

In January 2017, Diaz was arrested at his residence in Virginia. *See* Gov. Ltr. (July 27, 2018) at 1; Aff. in Supp. of App. for Order of Continuance (Mar. 17, 2017), Dkt. 10, at 1. He was presented before a magistrate judge in the Eastern District of Virginia, ordered detained, and removed to this District. Gov. Ltr. (July 27, 2018) at 1. At Diaz's initial appearance in this District, Magistrate Judge Gorenstein ordered Diaz released on a $50,000 personal recognizance bond ("PRB") with two co-signers, home incarceration, electronic monitoring, and other conditions.[1] *See* PRB, Dkt. 8; Minute Entry (Feb. 15, 2017), Dkt. 6. Upon Diaz's request, this Court later replaced the condition of home incarceration with a curfew, leaving in place the condition of electronic monitoring.[2] *See* Def.'s Ltr. (Apr. 28, 2017), Dkt. 18; Order (May 5, 2017), Dkt. 20. Over the next few months, the Court approved other modifications to Diaz's conditions of release, including altering the hours of his curfew and allowing him to move to a

---

[1] Specifically, Magistrate Judge Gorenstein imposed the following conditions of release: restriction of travel to the Southern District of New York, Eastern District of New York, and District of New Jersey; surrender of travel documents and no new applications for such documents; mental health evaluation and treatment; urine analysis and, if positive, drug testing and treatment; no possession of weapons or firearms; and no unsupervised contact with minors (except for contact with Diaz's 17-year-old nephew). *See* PRB, Dkt. 8; Minute Entry (Feb. 15, 2017), Dkt. 6. A few days later, Magistrate Judge Freeman modified the conditions of release to allow Diaz to reside at his home in the Eastern District of Virginia. *See* Order (Feb. 21, 2017), Dkt. 7.

[2] The electronic monitoring is a GPS device that tracks Diaz's movements at all times. *See* Gov. Ltr. (Oct. 22, 2018), Dkt. 89. It can be used to enforce Diaz's curfew. *See id.*; Tr. of Oct. 11, 2017 conference, Dkt. 49, at 17; Def. Ltr. (Aug. 30, 2017), Dkt. 41, Ex. B.

new residence.  *See* Order (Aug. 30, 2017), Dkt. 42; Order (Sept. 12, 2017), Dkt. 45.  The curfew and electronic monitoring conditions have remained in place.

In March 2018, Diaz, appearing *pro se*, filed a motion to dismiss the Indictment and to modify the conditions of his release, arguing that the statute that required his conditions of release to include a curfew and electronic monitoring, 18 U.S.C. § 3142(c)(1)(B), is unconstitutional.  *See* Def.'s Mem. of Law (Mar. 2, 2018).  The Court denied the motion to dismiss but reserved decision on the motion to modify the terms of release.  *See* Mem. Op. and Order (July 13, 2018), at 11–12.

## DISCUSSION

**I.    Legal Standard**

A court must order the pretrial release of a defendant subject to the least restrictive conditions or combination of conditions that will "reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community."  18 U.S.C. § 3142(c)(1)(B).  Under a provision of the Adam Walsh Act, if a defendant is charged with failure to register as a sex offender or with a number of enumerated sex offenses, the defendant's conditions of pretrial release must include, "at a minimum," electronic monitoring; a curfew; the requirement to report on a regular basis to the pretrial services office or another "designated law enforcement agency"; and restrictions on travel, personal associations, place of abode, contact with the alleged victim, and possession of weapons.  *Id.*; *see also United States v. Polouizzi*, 697 F. Supp. 2d 381, 386 (E.D.N.Y. 2010); *United States v. Arzberger*, 592 F. Supp. 2d 590, 594 (S.D.N.Y. 2008).

The Due Process Clause of the Fifth Amendment states that no person shall be "deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "Due process is

3

flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976); *see also Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011). When evaluating a procedural due process claim, courts consider "whether there is a constitutionally protected liberty interest at stake," and, if so, "whether there are adequate procedural safeguards in place to protect it." *Polouizzi*, 697 F. Supp. 2d at 387–88 (citing *Kapps v. Wing,* 404 F.3d 105, 112 (2d Cir. 2005)). In determining whether procedural safeguards are adequate, courts balance the factors set forth in *Mathews v. Eldridge*: first, "the private interest that will be affected by the official action"; second, "the risk of an erroneous deprivation of such interest through the procedures used"; and third, "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335; *see also, e.g.*, *Nnebe*, 644 F.3d at 158.[3]

A party challenging the constitutionality of a statute may mount a "facial" or an "as-applied" challenge. To succeed on a facial challenge, the party must demonstrate that "no set of circumstances exists under which the [statute] would be valid, *i.e.*, that the law is unconstitutional in all of its applications." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (internal quotation marks omitted) (quoting *United States v. Salerno,* 481 U.S. 739, 745 (1987)). An as-applied challenge, on the other hand, "requires an analysis of the facts of a particular case to determine whether the application of a statute, even one constitutional on its face, deprived the individual to whom it was applied of a protected

---

[3] Courts sometimes apply the more deferential standard in evaluating procedural due process claims that was articulated in *Medina v. California*, 505 U.S. 437 (1992). *See, e.g.*, *McKithen v. Brown*, 626 F.3d 143, 152 (2d Cir. 2010). The Government has not argued that the *Medina* standard should apply here, and, in any event, for the reasons articulated in *Polouizzi*, 697 F. Supp. 2d at 387–88, this Court finds that the *Medina* standard is not applicable to a procedural due process challenge to mandatory bail conditions established by federal statute.

4

right." *Field Day, LLC v. Cty. of Suffolk*, 463 F.3d 167, 174 (2d Cir. 2006) (citing *Wis. Right to Life, Inc. v. F.E.C.*, 546 U.S. 410 (2006)); *see also Tsirelman v. Daines*, 794 F.3d 310, 317 (2d Cir. 2015). "The essence of an 'as applied' challenge therefore is a claim that the manner in which a statute or regulation was applied to a [person] in particular circumstances violated the Constitution." *Almengor v. Schmidt*, 692 F. Supp. 2d 396, 397 (S.D.N.Y.), *aff'd sub nom. Schain v. Schmidt*, 396 F. App'x 713 (2d Cir. 2010).

When reviewing the submissions of a *pro se* litigant, the submissions must be "construed liberally and interpreted 'to raise the strongest arguments that they suggest.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)).

## II. Diaz's Motion to Terminate the Curfew and Electronic Monitoring Conditions of His Release Is Granted

### A. The Court Cannot Avoid Diaz's Constitutional Challenge

As an initial matter, it is worth defining the scope of Diaz's motion. Construing Diaz's motion liberally (given his *pro se* status), Diaz appears to challenge only the curfew and electronic monitoring conditions of his release, not the other conditions of release that are mandatory under the Adam Walsh Act.[4] *See* Def.'s Mem. of Law (Mar. 2, 2018), at 11. Diaz argues that the curfew and electronic monitoring conditions violate the Fourth Amendment prohibition against unreasonable searches and seizures, the Fifth Amendment Due Process Clause, the Eighth Amendment prohibition against excessive bail, and the separation of powers.

---

[4] Even if Diaz's motion did raise a challenge to the other mandatory conditions of release (such as the requirement to report regularly to pretrial services or the restrictions on travel, contact with any alleged victim, and firearms), the Court would reject such a challenge. These requirements are not unusual in criminal cases generally, and as to Diaz specifically, they are part of the least restrictive combination of conditions that will reasonably assure Diaz's appearance at trial and the safety of the community. The Court would impose these conditions even absent the Adam Walsh Act's requirements.

5

*See id.* While it is unclear whether Diaz intends to bring these challenges on an as-applied or a facial basis, the Court will construe his motion as raising both types of challenges.

The Government argues that the Court need not resolve Diaz's constitutional challenge because a curfew and electronic monitoring are part of the least restrictive combination of conditions that will assure Diaz's appearance at trial and, thus, would be appropriate even absent the Adam Walsh Act. *See* Gov. Ltr. (July 27, 2018), at 3–4; *see also, e.g.*, *United States v. Deppish*, 554 F. App'x 753, 755 (10th Cir. 2014). The Court disagrees. Looking to the factors that must be considered in setting conditions of pretrial release, *see* 18 U.S.C. § 3142(g), Diaz is charged with a low-level offense that, upon conviction, will result in a relatively short term of incarceration (if any), *see* Def.'s Ltr. (Apr. 28, 2017), Dkt. 18, at 3 (stating that the Government's *Pimentel* letter estimated a Guidelines range of 12 to 18 months). Diaz also has no criminal history, aside from the underlying sex offense (for which he was convicted 18 years ago) and a check-cashing misdemeanor from more than 30 years ago. *See id.* at 4. Nor does he have any history of substance or alcohol abuse. *See id.* at 3.

The Government has not argued that Diaz poses a danger to any person or to the community. *See* Gov. Ltr. (July 27, 2018); Gov. Ltr. (Aug. 29, 2017), Dkt. 40; Tr. of May 5, 2017 Conf., Dkt. 25, at 6–7; Tr. of Feb. 15, 2017 Initial Appearance, Dkt. 16, at 5, 9. Nor is it likely that the Government could credibly make such an argument, given the length of time that has elapsed since Diaz's sex-offense conviction and the fact that he has no other record of sexual misconduct. *See* Def.'s Ltr. (Apr. 28, 2017), at 4.

Diaz has also appeared for all proceedings in this case and, even before undertaking to represent himself, actively participated in pretrial litigation. *See* 18 U.S.C. § 3142(g)(3)(A) (the defendant's "record concerning appearance at court proceedings" is a factor in setting conditions

of pretrial release). Diaz has stated that he intends to use this case to collaterally attack his underlying sex offense conviction. *See* Tr. of Oct. 11, 2017 Conf., Dkt. 49, at 5–6; Tr. of Aug. 21, 2018 Conf., Dkt. 78, at 12–13. While the Court has repeatedly warned Diaz that this option is not legally available to him, Diaz has continued to indicate that he will press this theory at trial. *See, e.g.*, Tr. of Aug. 21, 2018 Conf., at 10, 12–13. In fact, Diaz recently filed an interlocutory notice of appeal on this ground. *See* Notice of Appeal (Oct. 16, 2018), Dkt. 85. Although that appeal is likely procedurally improper, this Court has no doubt that if convicted at trial, Diaz will vigorously press on appeal the argument that the Court erred in precluding this line of defense. In short, Diaz is deeply invested in using the instant prosecution to vindicate his larger interest of shedding his sex-offender designation and, thus, the Court does not believe that he presents a risk of flight sufficiently serious to warrant the extraordinary conditions of a curfew or electronic monitoring.

The Government argues that Diaz currently resides in a rural part of Virginia, where he has no ties to the community; additionally, the Government argues that the weight of the evidence against Diaz is strong, as it consists primarily of documentary proof. *See* Gov. Ltr. (July 27, 2018) at 4. The Government also asserts that upon his arrest, Diaz told law enforcement officers that he had moved to a remote location because he thought it would help him avoid SORNA's registration requirements. *See id.* But wishing to avoid registering as a sex offender is not the same as presenting a risk of flight from trial. Diaz is subject to a $50,000 PRB that was co-signed by his two siblings. *See* PRB. His travel has been restricted, and he is subject to strict pretrial supervision. *See id.* Given Diaz's circumstances, the Court believes that these conditions are sufficient to reasonably assure his appearance at trial without the need for a curfew or electronic monitoring.

In short, because the curfew and electronic monitoring conditions mandated by the Adam Walsh Act are not the least restrictive means of reasonably assuring Diaz's appearance, and because the Government has not argued that Diaz's release poses any danger to the community, the Court is unable to avoid Diaz's constitutional challenge.

**B.     The Adam Walsh Act's Mandatory Curfew and Electronic Monitoring Conditions Violate Procedural Due Process As Applied to Diaz**

District courts all over the country have held that the mandatory conditions of release in the Adam Walsh Act violate procedural due process on an as-applied basis. *See, e.g.*, *United States v. Karper*, 847 F. Supp. 2d 350, 361 (N.D.N.Y. 2011); *Polouizzi*, 697 F. Supp. 2d at 386–87 (collecting cases); *United States v. Torres*, 566 F. Supp. 2d 591, 596 (W.D. Tex. 2008). In *Polouizzi*, for example, the defendant, charged with receipt and possession of child pornography, challenged his curfew and electronic monitoring conditions. *See* 697 F. Supp. 2d at 385. The defendant had no record of prior sexual assaults, had fully complied with his release conditions, was presently employed, and had strong community and family ties. *See id.* In a thorough opinion, Judge Jack Weinstein found that the statute failed to satisfy the *Mathews v. Eldridge* test as applied to Polouizzi and, thus, that the Act unconstitutionally deprived him of due process. *See id.* at 390–91.

This Court adopts the reasoning of *Polouizzi*. Looking to the *Mathews* factors, the freedom to travel is an important liberty interest. *See id.*; *see also Ramos v. Town of Vernon*, 353 F.3d 171, 176 (2d Cir. 2003). A curfew and electronic monitoring, by definition, intrude on that interest. *See Polouizzi*, 697 F. Supp. 2d at 391. Given that Diaz's release poses no danger to the community and that other conditions of release are in place to reasonably assure his appearance, the mandatory nature of Diaz's curfew and electronic monitoring conditions carries a high risk of an erroneous deprivation of Diaz's rights. Additionally, while Diaz has received multiple

hearings regarding his bail conditions—including hearings that resulted in the Court modifying the terms of Diaz's curfew—none of those hearings assessed whether a curfew and electronic monitoring were appropriate conditions; rather, each hearing began with the assumption that those conditions had to be imposed because they are mandatory under the statute. *See, e.g.*, Tr. of Oct. 11, 2017 Conf. at 16–18; Tr. of Sept. 11, 2017 Conf. at 4.

On the other side of the equation, the Adam Walsh Act was enacted to protect "children from sexual attacks and other violent crimes." Pub. L. No. 109–248, tit. II, 120 Stat. 587, 588 (July 27, 2006). The Government unquestionably has a significant interest in protecting the public, and particularly children, from sexual assault and violent crime. *See Polouizzi*, 697 F. Supp. 2d at 392. But because the Government has not argued that Diaz poses any danger to the community, the Government has minimal interest in keeping him under a curfew or electronically monitoring his every move. More fundamentally, the Government has failed to show *how* the mandatory curfew and electronic monitoring conditions serve its interests in protecting the public. As Judge Weinstein and other courts have observed, Congress did not offer any evidence or findings of how a curfew and electronic monitoring help protect children from sexual attacks, nor did Congress explain why these conditions must be mandatory (rather than left to the discretion of district courts). *See Polouizzi*, 697 F. Supp. 2d at 392; *see also, e.g.*, *United States v. Gardner*, 523 F. Supp. 2d 1025, 1030 n.2 (N.D. Cal. 2007). The Government has offered no statistical or evidentiary basis for the Court to conclude that these conditions bear any relationship to the interest that they purport to serve.[5]

---

[5] While the Government has an interest in ensuring that all defendants, including those accused of sex offenses, appear for trial, Diaz has actively participated in this litigation, has no history of flight, and is currently subject to numerous other conditions of release. Moreover, the Government has not explained how or why a curfew helps assure that Diaz will appear for trial.

The Government has not challenged the holding or reasoning of *Polouizzi* or related cases, despite the Court having expressly invited briefing on that issue. *See* Gov. Ltr. (July 27, 2018), at 5–6; Mem. Op. and Order (July 13, 2018), at 11–12. The Government argues simply that because Diaz "has received multiple hearings and an individualized determination" of his release conditions, he "has received precisely the procedural due process to which he is entitled under the Fifth Amendment." Gov. Ltr. (July 27, 2018), at 6. But the Government's argument misses the point: Diaz has *never* had a hearing at which the Court considered whether a curfew and electronic monitoring were appropriate conditions in his case. When the risk of an erroneous deprivation of liberty is as high as it is here, procedural due process is not satisfied by giving the defendant a hearing at which the critical issue (here, curfew and electronic monitoring) cannot be considered. *See Mathews*, 424 U.S. at 334; *Nnebe*, 644 F.3d at 158; *Karper*, 847 F. Supp. 2d at 358 ("The mandatory provisions of the Act . . . effectively curtail any opportunity for an adversarial hearing on the question of a curfew and efficaciously diminish the procedural protections already embodied in the Bail Reform Act . . . ."); *Polouizzi*, 697 F. Supp. 2d at 394 ("The basic defect of the Adam Walsh Act, as applied, is that it imposes a mandatory limit on freedom of an accused without permitting an 'adversary hearing.'").[6]

*Mathews* also requires the Court to balance "the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. An adversarial hearing on the appropriateness of a curfew and electronic monitoring would pose

---

[6] Some courts have avoided holding the statute unconstitutional by noting that it leaves room for flexibility in imposing the terms of the curfew and electronic monitoring conditions. *See United States v. Peeples*, 630 F.3d 1136, 1139 (9th Cir. 2010); *United States v. Stephens*, 594 F.3d 1033, 1039 (8th Cir. 2010); *United States v. Kennedy*, 327 F. App'x 706, 707 (9th Cir. 2009). In these courts' view, the fact that the statute does not dictate the specific hours, location, or other particulars of these conditions leaves open the possibility that a court could make an individualized determination of release conditions for some defendants. In this case, however, where Diaz poses little danger or flight risk, and where other conditions are already in place to ensure his appearance, the limited flexibility inherent in the statute (which does not extend so far as to allow a court to dispense with the curfew and electronic monitoring conditions entirely) is not sufficient to protect Diaz's procedural due process rights.

little to no incremental burden compared with making those conditions mandatory; indeed, such a hearing is already required to set the other conditions of release. *See Karper*, 847 F. Supp. 2d at 359; *Polouizzi*, 697 F. Supp. 2d at 393. And the Government has not explained how, if at all, such a hearing would diminish its interests in ensuring the defendant's appearance at trial or protecting the safety of the community. *See Polouizzi*, 697 F. Supp. 2d at 393; *Torres*, 566 F. Supp. 2d at 598 ("[I]t is not clear to the Court how removing from judicial consideration whether a curfew with electronic monitoring is necessary to secure the safety of the community and of children improves [the Government's] interest.").

In short, the *Mathews* balancing factors make clear that Diaz has been denied his right to procedural due process by being subject to a mandatory curfew and electronic monitoring. The Court is mindful of the heavy burden that it bears in holding a statute unconstitutional, even on an as-applied basis. And the Court is unaware of any reported decision in this District that has reached the same conclusion as this opinion, save for one case that held the mandatory conditions in the Adam Walsh Act facially unconstitutional. *See Arzberger*, 592 F. Supp. 2d at 601. Nevertheless, the weight of authority appears to be that the Adam Walsh Act is unconstitutional as applied to some defendants. Diaz is one of those defendants.

For all the foregoing reasons, the mandatory curfew and electronic monitoring conditions in the Adam Walsh Act are unconstitutional as applied to Diaz, on procedural due process grounds. Accordingly, the Court orders those conditions to be terminated immediately.[7] Diaz

---

[7] Because Diaz's challenge succeeds on Fifth Amendment procedural due process grounds, the Court need not decide his Fourth Amendment, Eighth Amendment, and separation of powers challenges. The Court also need not decide Diaz's facial procedural due process challenge. The Court notes, however, that a facial challenge would likely fail. A curfew and electronic monitoring could be appropriate for some defendants who fall within the ambit of the Adam Walsh Act, including those who pose greater dangers to the community or risks of flight than Diaz; accordingly, the statute's mandatory conditions would not pose an impermissibly high risk of an erroneous deprivation of liberty to such defendants and, thus, would not be unconstitutional as applied to such defendants.

must promptly make arrangements to return the electronic monitoring equipment to his pretrial services officer.

## CONCLUSION

For all the foregoing reasons, Diaz's motion to terminate the curfew and electronic monitoring as conditions of his pretrial release is GRANTED. These conditions are hereby TERMINATED. All other conditions of release remain in effect.

The Clerk of Court is respectfully directed to mail a copy of this order to Diaz.

**SO ORDERED.**

**Dated: October 24, 2018**
**New York, NY**

_____
**VALERIE CAPRONI**
**United States District Judge**